ANNETTE ORTEGA, Appellant, v. TROOPER DANIEL REYNA, Individually and in His Official Capacity, Respondent.

No. 27592

January 22, 1998 953 P.2d 18

*Potter Law Offices,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *Laurel A. Duffy,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, SHEARING, J.:

Appellant Annette Ortega filed a complaint against respondent Daniel Reyna individually, and in his official capacity as a Nevada Highway Patrol trooper, to recover for injuries sustained after a traffic stop. Appellant's complaint alleged causes of action for unlawful arrest and detention in violation of 42 U.S.C. § 1983.[1] Appellant also raised state law claims of false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and negligent infliction of emotional distress.

The trooper filed a motion for summary judgment, relying on the doctrine of qualified immunity with respect to appellant's

---

[1]Respondent, acting in his official capacity, is not a "person" under 42 U.S.C. § 1983 and therefore may not be sued in his official capacity in state court under the federal civil rights statutes. *See* Northern Nev. Ass'n Injured Workers v. SIIS, 107 Nev. 108, 114, 807 P.2d 728, 732 (1991) (citing Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989)). *Will* does not prohibit claims against officials acting in an individual capacity, however. *Id.* at 115, 807 P.2d at 732.

section 1983 claim, and on the exception to the waiver of state sovereign immunity pursuant to NRS 41.032 with respect to appellant's state law claims. The district court granted the trooper's motion for summary judgment, concluding that there was no dispute as to the fact that the trooper arrested appellant because she refused to sign the citation. We conclude that the district court properly granted summary judgment in respondent's favor and affirm.

## FACTS

On July 5, 1992, at approximately 11:00 p.m., Trooper Reyna stopped a car driven by appellant. The trooper's version of what happened after the stop differs from appellant's. According to the trooper's affidavit, he stopped appellant for making a left hand turn where there was a "no left turn" sign. Appellant, in her complaint, contends that there was no sign prohibiting a left hand turn at the intersection.[2] According to the trooper, he informed appellant that he was going to give her a ticket for making a left hand turn and explained the citation to her. Appellant does not contradict this statement. The trooper states that he told appellant that her signature on the citation was not an admission of guilt. According to appellant's affidavits, however, the trooper never told her that signing the citation was not an admission of guilt. Appellant states that she questioned the trooper about whether signing the citation was an admission of guilt. The trooper states that appellant refused to sign the citation; appellant states that she never refused to sign.

According to the trooper, he then advised appellant that if she did not sign the citation, he would arrest her and take her to jail, to which appellant responded, "Go ahead and take me to jail." Appellant does not dispute that the trooper told her that he would arrest her if she did not sign the citation, and does not deny responding in the manner that the trooper alleges.[3] The trooper arrested appellant, handcuffed her, and transported her to the Las Vegas jail where she was booked for violating NRS 484.335, making a left turn where there was a "no left turn" sign. Appellant states that after she was arrested, she pleaded with the trooper to allow her to sign the citation, but the trooper would not permit her to sign, and told her that once she was arrested he

___

[2]Appellant does not claim a violation of her constitutional rights arising from the stop. Rather, appellant confines her arguments to the constitutionality of the subsequent arrest.

[3]With respect to the trooper's statement in his affidavit that appellant challenged him to take her to jail, appellant only states in her opening brief that her "alleged statement is hardly believable."

could not "unarrest" her. Appellant states that she never saw the citation, the trooper never issued her the citation, and she never had an opportunity to sign it. Appellant's husband, who was in the car with her at the time of the stop, corroborates appellant's account of what took place.

## DISCUSSION

We review de novo the district court's order granting summary judgment in respondent's favor. Day v. Zubel, 112 Nev. 972, 977, 922 P.2d 536, 539 (1996). Summary judgment is only appropriate when, after a review of the record viewed in a light most favorable to the nonmoving party, there remain no genuine issues of material fact. NRCP 56(c); Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). "Properly supported factual allegations and all reasonable inferences of the party opposing summary judgment must be accepted as true. However, conclusory statements along with general allegations do not create an issue of material fact." Michaels v. Sudeck, 107 Nev. 332, 334, 810 P.2d 1212, 1213 (1991) (citation omitted). Further, "[i]f the facts set forth in support of a motion for summary judgment are not controverted by the opposing party, then those facts are presumed to be true." Tamsen v. Weber, 802 P.2d 1063, 1067 (Ariz. Ct. App. 1990). Thus, we must accept appellant's properly supported allegations and make all reasonable inferences in her favor in determining whether respondent is entitled to judgment as a matter of law. However, where appellant has not controverted the trooper's account of what happened, we have taken his facts as undisputed.

### Section 1983 claim

To state a cause of action under 42 U.S.C. § 1983, appellant must show that (1) the trooper acted under color of state law, and (2) the trooper deprived her of rights secured by the United States Constitution or federal law.[4] Cummings v. Charter Hospital, 111 Nev. 639, 647, 896 P.2d 1137, 1142 (1995); Boulder City v. Cinnamon Hills Assocs., 110 Nev. 238, 245, 871 P.2d 320, 324 (1994). The parties do not dispute that the trooper was acting

---

[4]42 U.S.C. § 1983 provides in part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

under color of state law when he arrested appellant; rather, the parties focus on whether the trooper deprived appellant of her constitutional rights. Appellant contends that her arrest was in violation of the Fourth Amendment to the United States Constitution, under which the right to be free from an unreasonable seizure and the use of excessive force is clearly established. Appellant argues that the trooper arrested her because she questioned his authority, and adds that the trooper violated NRS 484.795 in arresting her. Appellant contends that a genuine issue of material fact exists as to whether the trooper told her that her signature on the citation was not an admission of guilt and that if she did not sign the citation he would arrest her. Respondent, on the other hand, contends that appellant failed to show a deprivation of a clearly established federal right.

In granting summary judgment in favor of respondent, the district court found that (1) it was undisputed that the trooper arrested appellant because she refused to sign the citation, and (2) appellant's argument that she refused to sign the citation because she was not informed that her signature was not an admission of guilt is unfounded because the statement printed below the signature line gave her that information. The court did not discuss its findings in the context of qualified immunity, and did not explicitly determine that the trooper was immune from suit as to either the federal or the state claims. We assume that the court impliedly concluded that the trooper was immune from suit as to both the state and federal claims.

Police officers who are sued under 42 U.S.C. § 1983 for false arrest have qualified immunity. Malley v. Briggs, 475 U.S. 335, 340 (1986). Under the qualified immunity doctrine, "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The pertinent inquiry in determining whether an officer is entitled to qualified immunity for a Fourth Amendment violation is whether a reasonable officer could have believed his conduct lawful under the clearly established principles of law governing that conduct. Alexander v. County of Los Angeles, 64 F.3d 1315, 1319 (9th Cir. 1995). An allegation of malice is not sufficient to defeat immunity if the officer acted in an objectively reasonable manner. Hansen v. Black, 885 F.2d 642, 644 (9th Cir. 1989).

In determining whether the law is clearly established, "[t]he operation of this standard . . . depends substantially upon the level of generality at which the relevant 'legal rule' is to be

identified." Anderson v. Creighton, 483 U.S. 635, 639 (1987). The right which the official is alleged to have violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. The issue is "the objective (albeit fact-specific) question whether a reasonable officer could have believed [appellant's] warrantless [arrest] to be lawful, in light of clearly established law and the information the . . . officer[] possessed." *Id.* at 641. Stated another way, we look not at whether there was an arrest without probable cause, but rather whether the trooper reasonably could have believed that his conduct was lawful in light of clearly established law and the totality of the circumstances. *Alexander,* 64 F.3d at 1319. Under this approach, we conclude that the trooper is entitled to qualified immunity.

Accepting as true appellant's properly supported allegations, as well as the trooper's uncontroverted facts, the trooper stopped appellant because he believed that she had made a left turn at an intersection where there was a "no left turn" sign. The trooper told appellant that he was going to give her a ticket and explained the citation to her. The trooper did not tell appellant that signing the citation was not an admission of guilt, and appellant questioned the trooper about this. The trooper advised appellant that if she did not sign the citation, he would arrest her and take her to jail. Appellant responded that the trooper should take her to jail, whereupon the trooper did so. Although we accept as true appellant's assertion that she never actually refused to sign the citation, we conclude that the trooper reasonably believed that appellant had refused to sign and that he had arguable probable cause to arrest her.

Appellant contends, however, that the trooper violated NRS 484.795 in arresting her because that statute sets forth specific situations where a trooper must take a person before a magistrate, and appellant did not fit into any of these categories. Thus, appellant seems to argue that the trooper did not have arguable probable cause to arrest her under this statute. We disagree. NRS 484.795 provides in full:

> Whenever any person is halted by a peace officer for any violation of this chapter and is not required to be taken before a magistrate, the person may, in the discretion of the peace officer, either be given a traffic citation, or be taken without unnecessary delay before the proper magistrate. He must be taken before the magistrate in any of the following cases:

1. When the person does not furnish satisfactory evidence of identity or when the peace officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court;

2. When the person is charged with a violation of NRS 484.701, relating to the refusal of a driver of a vehicle to submit the vehicle to an inspection and test;

3. When the person is charged with a violation of NRS 484.755, relating to the failure or refusal of a driver of a vehicle to submit the vehicle and load to a weighing or to remove excess weight therefrom; or

4. When the person is charged with a violation of NRS 484.379, unless he is incapacitated and is being treated for injuries at the time the peace officer would otherwise be taking him before the magistrate.

This statute gives an officer discretion to arrest persons stopped for traffic violations in lieu of giving them a citation. Consequently, under the circumstances presented here, the trooper had arguable probable cause to arrest appellant pursuant to this statute.

Further, the trooper had authority to arrest appellant pursuant to NRS 484.793. NRS 484.793 provides, in full:

Whenever any person is halted by a peace officer for any violation of this chapter not amounting to a gross misdemeanor or felony, he shall be taken without unnecessary delay before the proper magistrate, as specified in NRS 484.803, in either of the following cases:

1. When the person demands an immediate appearance before a magistrate; or

2. In any other event when the person is issued a traffic citation by an authorized person and refuses to give his written promise to appear in court as provided in NRS 484.799.

Even if we assume that appellant did not challenge the trooper to take her to jail, our conclusion would remain the same. The trooper was obligated to take appellant before a magistrate if she refused to sign the citation or if she demanded an immediate appearance before a magistrate. In this case, the trooper reasonably believed that one of these events had occurred. Therefore, the trooper had arguable probable cause to arrest appellant under NRS 484.793. Accordingly, we conclude that the trooper is entitled to qualified immunity, and that the district court properly entered summary judgment in his favor with respect to this claim.

*State law claims*

With respect to appellant's state law claims, we conclude that the trooper is immune from suit here as well. State immunity is a defense to claims made under state law, not a defense to an action under section 1983.[5] The state waives its immunity under NRS 41.031, but retains immunity under NRS 41.032 for officials exercising discretion.[6] A "discretionary act" is one which requires "exercise of personal deliberation, decision and judgment." Travelers Hotel v. City of Reno, 103 Nev. 343, 345-46, 741 P.2d 1353, 1354 (1987). The record shows that the trooper used his judgment in stopping appellant, in concluding that appellant refused to sign the traffic citation, and in taking appellant to jail after arresting her. *See* Maturi v. Las Vegas Metro. Police Dep't, 110 Nev. 307, 871 P.2d 932 (1994) (arresting officers' decision to handcuff behind the prisoner's back rather than in the front is discretionary and affords officers immunity). Accordingly, we conclude that the trooper is entitled to immunity with respect to the state law claims against him, and that the district court properly entered summary judgment in his favor.

## CONCLUSION

We conclude that the district court properly entered summary judgment in respondent's favor with respect to the federal and state law claims. Accordingly, we affirm the order of the district court.

YOUNG and MAUPIN, JJ., concur.

---

[5]Martinez v. California, 444 U.S. 277, 284 n.8 (1980) (states may not interpose state immunity doctrines to limit or defeat liability in § 1983 actions); *accord* Felder v. Casey, 487 U.S. 131, 139 (1988) ("[A] state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy, which of course already provides certain immunities for state officials." (citation omitted)).

[6]NRS 41.032 provides, in part, as follows:

[N]o action may be brought . . . against an immune contractor or an officer or employee of the state or any of its agencies or political subdivisions which is:

. . .

2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

SPRINGER, C. J., with whom ROSE, J., agrees, dissenting:

Trooper Reyna is not immune from section 1983 liability if a reasonably competent officer in the same circumstances and possessing the same knowledge as the trooper would have concluded that probable cause to arrest appellant pursuant to NRS 484.793 did not exist. *See* Anderson v. Creighton, 483 U.S. 635, 641 (1987). Viewing the evidence in the light most favorable to appellant, as we are compelled to do in reviewing a summary judgment, we see the following facts: appellant was not issued a citation, appellant did not refuse to sign a citation, and appellant never saw a citation. Appellant's husband, who was in the car with appellant at the time of the traffic stop, also stated that appellant was not issued a citation, that she did not refuse to sign, and that she never saw a citation. NRS 484.793 grants a peace officer authority to arrest a person who is issued a traffic citation and refuses to give a written promise to appear in court. *See* NRS 484.793. If appellant was never issued a traffic citation and did not refuse to give a written promise to appear, then probable cause to arrest her pursuant to this statute did not exist. Thus, a reasonable trooper *would not* have concluded that probable cause existed to arrest appellant under NRS 484.793. Therefore, appellant has presented specific facts sufficient to create a genuine issue of material fact concerning the trooper's conduct and the circumstances surrounding her arrest. For this reason, I would reverse the order of summary judgment and remand to the district court for further proceedings.